We'll hear the first case on calendar which is Hernandez versus Mazo Hernandez versus Sessions. It does it every time. Good morning your honors. I represent the petitioners in this case the Mazos who are appealing a decision of the Board of Immigration Appeals finding that they are removable from the United States for having engaged in or for finding that the government has met its burden of proof and demonstrating that they engaged in less than bona fide marriages and denying their waiver humanitarian waiver of removal and we've raised three issues in our brief which I think the court should reverse the board's decision. The first that we raised is that the agency applied an incorrect burden of proof in determining that the government met their burden of proof in establishing the petitioners removability. The burden of proof in this case which the government admits is clear and convincing evidence. The immigration judge who made the initial decision never used the phrase clear and convincing evidence in his decision. He never even mentioned what the burden of proof is at all and the little bit of language that is in the opinion in where he decides why he thinks the government's evidence was better than the petitioners evidence is language that mostly tracks the lower preponderance of evidence standards. So the fact that the judge never said what he thought the standard was when coupled with the fact that the language that he did use to describe why he thought the government met its burden of proof most closely resembles the preponderance standard rather than the correct clear and convincing standard demonstrates that the judge did not apply the correct standard or at the very least the record doesn't show that he was applying a preponderance standard. Sure so that would be on page 341 of the record I'm sorry page 339 of the record where he acknowledged that the petitioners presented significant evidence in support of their position that the government had not met its burden of proof but the judge said that the which is a classic preponderance standard where you sort of weigh which side is slightly better than the other and he said that our evidence didn't you know sort of outweigh theirs well that's not enough for them to meet the burden of proof and if it's just you know 51% them 49% us we win because the burden of proof on them is clear and convincing. You think it's one of those cases where 51, 49, 49, 51? Yes I mean we certainly don't disagree that the government they have a case but basically what we're saying is their case is not enough to meet the clear and convincing standard and that's what the Congress specifically wrote into the law and what the Supreme Court said a long time ago and it's just not enough evidence to strip the petitioners of their long-term lawful permanent resident status. The BIA did articulate the correct standard on appeal correct? Yes well they noted that at the merits hearing petitioners counsel me said the correct standard not the judge. I think I think the problem with the fact that the board mentioned it is the board didn't basically say you know we admit that the judge didn't apply the right standard but we think it does meet the clear and convincing standard and this is why. The judge just wrote the BIA just wrote affirmed the judge's decision saying we agree with the judge's weighing of evidence we agree with the judge's reasoning so we affirm his finding of removal so the fact the fact that they were essentially smart enough to put that phrase in their decision doesn't change the fact that they affirmed the same analysis of the judge which was based on the wrong standard so that's why we think that you know the fact that the board was sort of smart enough to put that in there is not enough to show that the agency itself as a whole applied the actual correct standard. What are your other grounds of appeal? Sure the two other grounds would be the fact that regardless of whether the BIA and the judge applied the right standard that no rational try or effect would be able to find that this record demonstrates removability by clear and convincing evidence because the judge found and the board and the board affirmed that the petitioners presented substantial credible evidence to rebut the government's contention that their marriage was not bona fide which is namely testimony from the female petitioners ex-spouse which is in the record at page 485 to 516 testimony of a mutual friend. He may not have assumed that it was a sham marriage. Well that doesn't mean that she didn't enter into it without effect. As a general matter that is correct but I think if you look at the testimony in this case basically what he said is we started the marriage and basically sort of I admit that I was drinking too much and my excessive drinking pushed the Monica basically away from me and in retrospect when looking back at sort of what happened with the relationship my sort of drinking too much was what sort of dissolved the marriage pushed her away from me and that's why she strayed from me and that's why she eventually found her new spouse which is the other petitioner. Mr. Mazza seemed to be having a parallel experience with his marriage. Yes and there was a testimony of a mutual friend as well. I mean I think that's not uncommon in you know it's an unfortunate fact of American society that lots of marriages end in divorce. The petitioners admit that they lived in the same large apartment complex at the time they were married to their respective spouses that there were parties that they had mutual friends at in the building and they sort of I mean it's not uncommon when you're breaking down a relationship with your spouse because they're abusing substances you have a friend who you've met in the building and you just sort of common thing and I think if I certainly understand why there would be some suspicion but I think if you if you if you remove the immigration aspect of it this isn't really that uncommon of something that would happen in America today. So when you have credible testimony which is the ex-spouse the mutual friend and then there's also more than a hundred pages of joint documents showing that each of the petitioners did live with their respective spouses for at least a considerable period of time before the marriages started breaking down we just think that no rational trier of fact could say that the record shows by clear and convincing evidence that the marriages were fake. If this was a preponderance case I think it'd be a different story but that's not the standard in this case. This isn't rightfully relevant I'd like to know. The the the the their oldest daughter is now 18? Yes. And the younger daughter is how old? I believe she's 16. And the oldest daughter is she graduated from high school? Is she now attending college? Yes and it and she's going to college. I know they were both pretty successful in soccer and I haven't spoken to them recently but I know that they had been discussing she was going to be getting a soccer scholarship to go to university and I think that sort of moves into the last part of the case which which was the denial of the waiver which at the first hearing the judge said I think this is a close case but I think the negative equities are stronger than the positive equities and the board affirmed that. Do we have jurisdiction to review that? I think you have jurisdiction to review the legal question as to whether the legal question as to whether the agency followed the law of case when adjudicating the waiver because during the first set of hearings the judge said the board affirmed the government never contested that this was a close case in terms of equities. Then on remand there's no new evidence of negative equities but there's significant evidence of new positive equities namely the fact that the eldest daughter essentially blames herself for her parents being deported because it's the fact of her birth which on which were fraudulent and that she said to go into therapy and you know had suicidal thoughts because of what's going on with her parents. The fact that Mr. Mazzo is her father at a time when her mother was was married to somebody else. Yes. We'll hear you on rebuttal. Thank you. Good morning may it please the court. Russell Verby on behalf of the Attorney General. With respect to the burden admittedly the immigration judge's decision doesn't say exactly what burden was applied but the argument from the petitioner still fails for a couple of reasons. If we look at the transcript there is no confusion and no debate as to what burden was going to be applied. Petitioner's counsel mentioned clear and convincing evidence four times in front of the immigration judge. Nobody quibbled with that. Nobody debated it and it moved on from there. Second when the record returned to the immigration judge on remand the IJ made clear that the board had affirmed his previous decision of finding the respondents removable based on clear and convincing evidence. And third when the board itself found the petitioners removable under the proper standard that puts an end to the issue. This is not a situation where the board said I we adopt and affirm the immigration judge's decision and leaves this court to wander the record looking for what the basis is. The court I'm sorry the board in this case adopted and affirmed but then went further and those comments clearly said that the evidence met the clear and convincing evidence standard. So this court under its own precedent in WALA has to look at the immigration judge's decision as augmented by the board and that is the agency's decision. Clear and convincing evidence was satisfied. Now the immigration judge's use of the word outweighs or in the totality are taken out of context here. The immigration judge in that part of decision had already said in the first sentence of that paragraph that the DHS had met its burden but it had been satisfied its burden and then went on to look at the countervailing evidence offered by the petitioners and simply said that the testimony of the prior spouse and the evidence offered didn't unseat or outweigh that offered by the department. So there's really not an issue with respect to whether the proper burden was applied. Moving on to removability the petitioners want to focus on the exception of their marriage and treat this as a traditional marriage fraud case but that's not the way the notice to appear alleged it nor is it the way the agency treated this case. The notices to appear alleged that there was misrepresentation of a material fact at the time that these aliens submitted their applications or their petitions I should say to remove the conditions on their residencies and that misrepresentation was that they were then at that time living in genuine bona fide marriages with their first respective spouses. The IJ focused on that part and so did the board with respect to whether the marriage was bona fide. If they had been truthful what would have happened? Well they could have applied for waivers of if the marriages were dissolving at the time they needed to apply for the removal of conditions on their residency they both could have applied for waivers under section 216 of being in genuine marriage at the time they removed but instead they chose to lie and that's what tripped them up your honor. So if you look at Ms. Mazzo's 1990. It wouldn't matter if if each of them contracted a marriage with an American citizen that was at the time of marriage genuine. Your honor yes absolutely the marriages we don't know for a for a fact but the marriages could have been genuine at inception and then it dissolved by the time they went to remove the conditions on their residency then they could have sought waivers under section 216 to not be in valid marriages anymore but they didn't do that instead they chose to mislead and applying to the DHS. You're kind of close to saying that an unhappy marriage is not a marriage. Most of them are. Well like I said your honor the way that the immigration code is written and I know some marriages aren't happy and they still stick it out. Were they divorced at the time of their applications? They were divorced within I believe three or four months or five months. No they were not they were not divorced but they were not living together and if you look at the if someone but I someone were to ask someone who were was married but you married the answer would be yes. Yes your honor. And it would be no less legitimate but just means that there's there's a reason why the two parties are not getting along and so they're not living together. There's the distinction when it comes to immigration your honor because the path to lawful permanent residency and eventually citizenship in this situation is based on the marriage so the marriage at the time you have when you say I'm still living in a marriage or you just simply apply for the waiver you can't just lie. Wait a second I that's why I asked you I don't understand you mean if that if they're married but they're not divorced they could still file a joint tax return they could still do lots of things as spouses they can still inherit each other's estate automatically so I guess I don't understand how is it to delegitimize the marriage where one's been unfaithful to the other but they haven't divorced because your honor infidelity is infidelity is not fraud no it's not infidelity infidelity is grounds for divorce but not but doesn't delegitimize a marriage appropriately solemnized or with for appropriate purposes at the time it was entered. But the way Congress has written the code has written section 216 is both couples must appear and show that the marriage that they are still living in is genuine viable and ongoing when they apply to have the petitions on their petitions on their conditional residence remote they don't if they are not but then your honor there would be no need for the good faith waiver. I'm trying to understand okay so take it just slow down a little bit so if so if they don't like each other but they're still married it's it's not ongoing is that your view? It's it's the nature of the marriage is the critical key in section 216. Wow. The nature of the marriage is very vital. It's like marriage counseling with an immigration twist. In an odd way your honor but I think the point that that really needs to be hammered home is it if your marriage is dissolving or falling apart and your other spouse will not appear with you for that interview or will not sub no longer support your petition to have the conditions removed you can apply for a waiver. No I got that. And that's I think that's what points back towards the marriage what you say about that marriage has to be genuine and true. I'm just gonna stop harassing you after I answer me a couple more questions. Absolutely Judge. Do you do you take the position that that that the legitimacy of the marriage or that the record in any event supports a finding of that the marriage was not legitimate at the time the marriages were not legitimate at the time they're originally entered into and what is there a finding to that effect by the immigration judge? There is not a finding that effect because that's not the way the case was alleged. All right so it's in the context of the misrepresentations that occurred at the time of the applications for the waiver. Exactly right your honor. That's the and that's the charge that was alleged. Okay. And you know the petitioners have to face that it's not inception and that's what they want to focus on. Well but there is a law issue there right because the Third Circuit's taken a different view of the statute hasn't it? It has but that issue was not raised before the lower court before the board or before there was never a challenge to the argument they can't now say oh we have a legal issue we want to send back if you want to test the legal issue we'd have to send it back. Okay so if we if we say that there's a legal issue there you would say that the appropriate remedy would be remand. If the court finds an unresolved legal issue that hasn't been raised by the petitioners then it has to go back yes your honor. Okay. And that's Ventura. Believe me I know it sounds seems adversarial at times but and it's probably because of the way I ask but it's just I hadn't thought of it the way you were thinking of it and so that's what made me start to think about it and I appreciate your answers they were very very helpful. Thank you your honor I appreciate it. Looking at the evidence that was offered Mrs. Mazio said she was in that genuine marriage to Mr. Sanchez and they lived in 1999 at that Washington Avenue address but it's contradicted by her application for naturalization in which she says well I was living at the Elmwood boarding house from July 1997 through 1999 and why is that date important because those are critically important dates because those are the exact same dates that Mr. Mazio says he was living at that address and so that's an indication that petitioners were living together nearly two years before they told the DHS they were still living in genuine marriages with their prior spouses. The only explanation Mrs. Mazio offered was that while I was receiving mail still at the Washington Avenue address. Well that explanation fell apart immediately because then that would have been the address that appeared on your petition to remove conditions on residency not a P.O. box somewhere in Bridgeport and it gets worse though because although she always said she was living in apartment 2A the lease she offered said she lived in apartment B6 and worse the 1996 W-2 form she offered said she lived in apartment 3B which just happened to be Mr. Mazio's apartment that he shared with Ms. Hernandez. So again the evidence is pointing that all the way back in 1996 perhaps these people were living together not with their actual spouses and Mr. Mazio actually only added fuel to the fire when he testified that their relationship picked up speed after they discovered the child was theirs. Well they didn't. The marriages to American citizens took place late in 95? 95 yes. Or early 96 so you're saying that the they as it were merged in 96? Could have been as early as 1996 there's some indications pointing in that direction Your Honor. Can you address the evidence regarding the leases the similarity in the leases that was addressed? Yes Your Honor there's two leases in this in this in these applications for naturalization that are offered in independent applications and the leases refer to two different properties that these petitioners live at. The strange thing about the leases is they're both exactly the same right down to the same spelling errors right down to the same notary and you add to that the fact that Mr. Mazio put his... What inference is drawn from that? That these was an orchestrated effort to make this look like these people were living in separate homes with separate spouses but that was a lie a misrepresentation whether the marriages were original were good in the beginning and whether they just falling a little part it's still a lie you're not living with the people in the misrepresentation is what the statute calls for I will say in my closing seconds with respect to the waiver application the words close call don't really qualify as law of the case the law of the case was that the discretionary determination was not in your favor that's the law of the case nothing unseated that and what this really is is dressing up a discretionary attack in statutory regard subject any further questions that'll conclude the Attorney General's presentation. Thank you very much. Thank you, Your Honor. We'll hear rebuttal, Mr. Conlon. Sure, so we argued we definitely disagree with the government when they say this isn't a marriage fraud case this is a marriage fraud case the only ground of removability in this case is that the petitioners were misrepresented themselves as being in bona fide marriages at the time of adjustment of status because the only the only charge of removal is that they were inadmissible at the time of adjustment so what we've been arguing since the beginning of the case is that all these misstatements and things at the 751 and at the N-400 stage because the charges you were inadmissible at the time of adjustment those post-adjustment facts are only relevant to the extent that they demonstrate or can prove that at the time of adjustment the marriage wasn't bona fide and that's what we've been arguing from the beginning and basically what we've been saying is look the marriages fell apart we don't dispute that but it doesn't mean that the marriages weren't real at the beginning and the immigration . . . Not necessarily at the beginning. The question is were they real at the time of adjustment. Sure and the government and the the government has not alleged the immigration judge didn't find and the board never found a misrepresentation made before adjustment or during the adjustment process the only misstatements that they're pointing to are stuff that was made beyond adjustment when they had already adjusted status so misstatements at the removal of condition stage they don't make you not admissible at the time of adjustment by itself they only make you inadmissible at the time of the adjustment if you make the leap of saying these post-adjustment misstatements make us re-evaluate what we knew at the time of adjustment so the statement itself sort of by logic can't make you inadmissible at the time of adjustment because you've already adjusted. It's a curious standard applying to immigration officials after the after admission and granting of the status with conditions doesn't doesn't precipitate or serve as an adequate grounds to removal but just only as proof of the fact that you were lying earlier that's in Congress's wisdom they've decided to write the statute that was my mind with inconsistency but I but I'll have to think about it because it really does turn on what the operative time for analysis of the legitimacy of the